QUIRK *et al. v.* UNITED STATES (No. 1579).[1]

1. KNIVES WITH FOLDING BLADES AND SPRING BACKS—HOW DUTIABLE.

Knives with folding blades and spring backs, designated as budding and pruning knives, are dutiable under paragraph 128, tariff act of 1913; and are not to be admitted free under paragraph 391 as agricultural implements because they are capable of being put to agricultural uses.

2. NO IRRECONCILABLE CONFLICT BETWEEN PARAGRAPHS 128 AND 391.

The fact that some of the articles dutiable under paragraph 128 may be put to agricultural uses and that paragraph 391 exempts from duty all agricultural implements creates no irreconcilable conflict.—Powers *v.* Barney (19 Fed. Cas., 1234, 5 Blatch., 202) distinguished.

United States Court of Customs Appeals, December 6, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7735 (T. D. 35499).

[Affirmed.]

*Comstock & Washburn* (*Albert H. Washburn* and *J. Stuart Tompkins* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of counsel), for the United States.

---

[1] Reported in T. D. 35983 (29 Treas. Dec., 728).

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

Paragraph 128 of the tariff act of 1913 provides for—

penknives, pocketknives, clasp knives, pruning knives, budding knives, erasers, manicure knives, and all knives by whatever name known, including such as are denominatively mentioned in this section. which have folding or other than fixed blades or attachments * * * whether assembled but not fully finished or finished—

at ad valorem rates of duty based upon their value by the dozen.

Paragraph 391 of the same act, in the free list, is as follows:

391. Agricultural implements: Plows, tooth and disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, and all other agricultural implements of any kind and description, whether specifically mentioned herein or not, whether in whole or in parts, including repair parts.

In the protest the importations in this case are referred to as pruning and budding knives. In the answer to the protest they are described as budding and pruning knives, with the comment in substance that on account of the many uses other than agricultural to which they can be applied and because of their similarity in construction to pocketknives having folding blades with spring backs, they were returned for duty as pocketknives under paragraph 128, which advisory classification was followed by the collector.

The importers called one witness, the Government two. From their testimony, in connection with the exhibits and papers in the case, the Board of General Appraisers found the merchandise to be budding and pruning knives, and, as we understand, both parties so assume.

An examination of paragraph 128 demonstrates that what are known as pruning knives and budding knives, as well as certain other named knives, and "all knives by whatever name known * * * which have folding or other than fixed blades or attachments," are designed to be covered thereby. Clearly the merchandise here is precisely within not only the term "pruning knives and budding knives," but is also knives which have folding blades or attachments not fixed.

On the other hand, paragraph 391 provides for certain named agricultural implements, among which knives are not *eo nomine* included, and further for "all other agricultural implements of any kind and description, whether specifically mentioned herein or not." It is by virtue of the last quoted words that importers claim the merchandise here is entitled to free entry under paragraph 391 and not dutiable under paragraph 128 as held by the board.

We can not agree with this contention. The budding and pruning knives are not only *eo nomine* mentioned in paragraph 128, but that

paragraph also is framed to cover all knives by whatever name known which have folding or other than fixed blades or attachments, and surely it can not be said that this description does not more accurately meet the condition of the merchandise here than the expression " all other agricultural implements of every kind and description, whether specifically mentioned herein or not," especially as we think the expression " mentioned herein " of paragraph 391 relates to the paragraph rather than the other provisions of the act.

The cases relied upon by the importers in support of their contention that this expression is not so related, we think, do not present questions sufficiently analogous to the one here to be controlling.

Neither are we disposed to devote much discussion to the claim of importers that there is an irreconcilable conflict between the two paragraphs, and that such being the case the free entry paragraph, which is later in the act than the duty provision, should be given controlling force, because, as we view it, there is no irreconcilable conflict here. Each of the paragraphs has ample scope for application without invading the provisions of the other. This case is not like that cited in Powers v. Barney (19 Fed. Cas., 1234; 5 Blatch., 202), where Peruvian bark was both made dutiable and given free entry *eo nomine.*

Reviewing the two paragraphs which it is alleged are in irreconcilable conflict, we find this state of affairs: Under paragraph 128 *certain* knives *eo nomine* described are made dutiable and in addition *all* knives by *whatever name known,* including those *eo nomine* mentioned in the *section* which have folding or other than fixed blades or attachments. It is rather difficult to see how a more definite or certain description of the knives to be made dutiable thereunder or indeed of the merchandise here involved could have been successfully undertaken. These are pruning or budding knives. If they are not such, they are knives which have a folding or other than fixed blade or attachment.

Now, paragraph 391 declares at the outset that its scope is " agricultural implements." Their specific names are legion, and therefore Congress named a few of the most common and important, but left out many. It then proceeds to enlarge, or at least make more definite in certain respects, the scope of " agricultural implements," including therein cotton gins and sugar-making machinery, and finally concludes by declaring in effect that all agricultural implements of every description, whether specially mentioned in the paragraph or not, shall also be exempt. We do not think paragraph 391 so closely describes the merchandise here as does paragraph 128.

If we were to assume that the real question is, as the importers suggest, one of fact, viz, Are these knives chiefly used as agricultural implements? the importers can not prevail because such chief use

is not established. The board has not found the chief use of these knives to be as agricultural implements, and upon the exhibits and the testimony, which we deem it unnecessary to recite, we are unable to find such chief use.

The result is that the judgment of the Board of General Appraisers is *affirmed.*