### Voss Cutlery Co. *v.* United States (No. 4757)[1]

United States Court of Customs and Patent Appeals, June 3, 1953

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for appellant.

*Charles J. Wagner*, Acting Assistant Attorney General (*Richard H. Welsh*, special attorney, of counsel), for the United States.

[Oral argument April 15, 1953, by Mr. Qualey and Mr. Welsh]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, entered pursuant to its decision C. D. 1457, 29 Cust. Ct. 127.

The imported goods were described on the consular invoice as "1000 letter openers" and were classified by the Collector of Customs at the port of New York under the provisions of paragraph 354 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as penknives with folding blades and decorated steel handles, valued at more than $6 per dozen. Duty was accordingly assessed thereon at 17½ cents each and 27½ per centum ad valorem.

[1] C. A. D. 526.

Appellant protested and relied upon the claim, which the court overruled, that the articles are properly dutiable at the rate of 32½ per centum ad valorem under the provisions of paragraph 397 of the same Act, as modified by the trade agreement hereinbefore described, supplemented by Presidential proclamation T. D. 51909.

The pertinent provisions of the two paragraphs as modified read as follows:

Paragraph 354. Penknives, pocketknives, clasp knives, pruning knives, budding knives, erasers, manicure knives, and all knives by whatever name known, including such as are denominatively mentioned in the Tariff Act of 1930, which have folding or other than fixed blades or attachments, all the foregoing (except penknives and pocketknives which have folding blades and steel handles ornamented or decorated with etchings or gilded designs or both), valued at more than $6 per dozen_____ 17½¢ each and 27½¢ ad val.

Paragraph 397. Articles or wares not specially provided for, whether partly or wholly manufactured:
    Composed wholly or in chief value of gold, or plated with gold, or colored with gold lacquer_____ 32½% ad val.

A sample of the importation received in evidence was identified as plaintiff's Exhibit 1 and described in the court's decision with the following pertinent comments:

The importation is represented by exhibit 1, which is 8 inches in length, and in chief value of steel. It has a handle 3 inches long similar to the conventional pocketknife handle, gold-plated, and otherwise decorated, with a knife blade which folds into the handle. Firmly riveted to the handle is a tapered strip of white metal approximately 6 inches long, apparently designed as a letter opener. It is not disputed that the article falls within the descriptive language of paragraph 397, above quoted. However, it is asserted by defendant that the provisions in paragraph 354, *supra*, describe the article with greater specificity and, accordingly, that it was properly classified therein.

The only witness, Carl F. Thalman, employed since 1947 as sales manager and assistant to the president of Voss Cutlery Company, appellant, was called in its behalf and testified as reported in the following excerpt from the record:

By Mr. Rode:

Q. For how long a time, Mr. Thalman, have you been familiar with articles like Exhibit 1? A. Oh, I'd say about 13 years.

Q. Have you sold them or seen them sold? A. Similar, not the exact ones.

Q. I see, but will you describe what Exhibit 1 is, in your language? A. It is primarily manufactured for use as a letter opener and one that is used on a desk, more or less. The blade is made in such a way that it affords the user the means of cutting clippings or removing paper from magazines and so forth and also to erase; to make erasures. The blade is made so that it folds into the handle, affording a safety measure.

Judge Lawrence: When you use the term blade, you refer to the folding portion of the exhibit?

The Witness: Yes.

By Mr. Rode:

Q. Have you seen articles like Exhibit 1 used? A. Yes.

Q. Have you seen articles like Exhibit 1 used many times? A. Quite a few times.

Q. In various different places? A. Yes.

Q. Where have you seen articles like Exhibit 1 kept when they are not actually being used? A. On the desk or table.

Q. You mean a desk in an office or factory or something like that? A. That's right.

Q. Have you ever seen an article like Exhibit 1 being carried on the person? A. Never.

Q. In the course of your employment, you handled penknives, have you? A. Yes.

Q. Pocketknives? A. Yes.

Q. Claspknives? A. Yes, sir.

Q. Practically all kinds of knives? A. All types of cutlery.

Q. Have you ever sold articles like Exhibit 1 as a knife or penknife? A. No.

Mr. Rode: Your witness.

Mr. Welsh: No cross examination.

Mr. Rode: That is all. Thank you.

Mr. Rode: I offer to stipulate with counsel for the Government that Exhibit 1 is in chief value of steel and is plated with gold.

Mr. Welsh: So agreed.

Counsel for the Government agreed that the tapered strip of metal riveted to the handle into which the knife blade is folded makes something of the imported article other than the ordinary penknife. The Government has vigorously contended, however, here and at the trial of the case, that the merchandise in controversy is a combination penknife and letter opener dutiable in accordance with the provisions of the statute as "knives by whatever name known," citing *Silberstein* v. *United States*, 3 Ct. Cust. Appls. 239, T. D. 32562.[1]

In the *Silberstein* case imported articles, each consisting of a combination penknife and letter opener, were classified and assessed for duty as "knives with folding blades" under paragraph 152 of the tariff act of 1909. This court there remarked that the character of a knife, fitted with an attachment for opening letters, or fitted with any of the assortment of useful little implements usually found in the combination penknife, was not changed because the attachment made the knife something more than the ordinary penknife.

The Customs Court in the instant case regarded the imported article as a combination desk knife and letter opener and considered the *Silberstein* case of controlling influence. In reaching its conclusion the court noted that the doctrine of *Silberstein* was approved and followed in *Magnetic Cutlery Co.* v. *United States*, 24 Treas. Dec. 354, Abstract 31515; that over a period of 40 years there was nothing to indicate that the case had been reversed or modified; that the provision

1. See also *Quirk et al.* v. *United States*, 6 Ct. Cust. Appls. 444, T. D. 35938; *Wilford Schade Forwarding Co.* v. *United States*, T. D. 36702, 31 Treas. Dec. 241; *F. A. Koch & Co.* v. *United States*, T. D. 36385, 30 Treas. Dec. 744.

of the act of 1909 there construed was reenacted in practically identical language in all subsequent tariff acts; and that because of its sound logic, no change in the interpretation of the statute would be now justified.

We agree with that conclusion and in view thereof deem it unnecessary to discuss other points raised by the arguments of counsel.

The judgment of the United States Customs Court is accordingly *affirmed*.