AUFFMORDT & Co. *et al. v.* UNITED STATES (No. 1584).[1]

1. ADMINISTRATIVE PRACTICE CONTRARY TO JUDICIAL DECISION.

An administrative practice contrary to a rule of law established by judicial decision would not justify the court in departing from the rule of law.

2. TRIMMINGS AND MATERIAL FOR MAKING THEM.

Goods in the piece which are not commercially known as trimmings and which are not adapted, in the form in which imported, for use as such, but require to be cut into forms or made into rosettes or bows before being applied to a garment, are not to be classified as trimmings. On the other hand, goods which are known commercially as trimmings or which are imported in a form in which they are intended to be used directly as trimmings, without anything further being done than a mere cutting of the goods, may be and should be classified as trimmings unless otherwise more specifically provided for.—Naday & Fleischer *v.* United States (155 Fed., 303).

3. CONSTRUCTION.

Words in the tariff act must be given the meaning they had at the time of the law's enactment.

4. COMMERCIAL DESIGNATION—VEILINGS.

Whether or not a fabric is veiling is a matter of commercial designation and a question of fact.

5. SILK MOURNING CRAPES, HOW DUTIABLE—TRIMMINGS—VEILINGS.

Goods known commercially as silk mourning crapes, varying in width from 19 to 42 inches, are dutiable under the general provision for woven fabrics of silk in paragraph 318, tariff act of 1913. The fact that the narrow pieces are to be cut up and made into trimmings does not make them dutiable as trimmings under paragraph 358. The wide pieces, at the time of importation and at the time of the enactment of the tariff law of 1913, were little used for making veils, and were not commercially designated veilings. They are not dutiable as veilings under paragraph 358, even though they had been more largely used for making veils and had been classified as veilings by customs officers.

United States Court of Customs Appeals, April 11, 1916.

APPEAL from Board of United States General Appraisers, Abstract 37866.

⬛ersed.]

⬛. *Brown* for appellants.

⬛*m* Assistant Attorney General (*Thomas J. Doherty* and *Martin T. Baldwin,* ⬛neys, of counsel), for the United States.

[Oral argument Dec. 8, 1915, by Mr. Brown and Mr. Doherty.]

⬛MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

⬛ERY, Presiding Judge, delivered the opinion of the court: ⬛e merchandise in question consists of silk crapes in the piece, varying in width from 19 to 42 inches. The wide goods were assessed

---

for duty as veilings while the narrower goods were assessed for duty as trimmings, both at 60 per cent ad valorem under paragraph 358 of the tariff act of 1913. Both classes of goods are claimed by the importers to be dutiable at 45 per cent ad valorem under the general provision for woven fabrics of silk in paragraph 318 of the same act. The narrower widths of crape in question are chiefly used in making trimmings. In this use the goods as imported are first cut on a bias and then usually hemmed and applied to the garment, or it may be a hat, the bias pieces being usually folded and sewed together before being applied. There are also plaited crape trimmings made from the same material, which in like manner has been cut on the bias and the pieces sewed together.

The board held these goods as imported to be trimmings. The contention of the importers is that they are not such but material for trimmings, and that the rule has been established that material for trimmings is not trimmings within the tariff sense.

The board relied in its decision upon the case of Robinson *v.* United States (122 Fed., 970). In that case material like that here involved was held to be trimmings in the tariff sense, the court saying:

> The evidence before the board was not contradicted, and has not been; and it seems to be clear that the narrow is as well known by the material to be for trimmings as the wide is for veils, and neither seems to belong with the dress goods of paragraph 387.

It is claimed that this case was overruled by the case of Robinson *v.* United States (121 Fed., 204), a case decided three years later than the one reported in 122 Fed. In this later case the goods in question were found by the board to be woven wholly of silk from 4 to 12 inches wide, used directly in these widths either exclusively or chiefly for trimming women's hats, bonnets, or other wearing apparel. They were generally known in the trade as chiffon or mousseline bands, or as gauze ribbons, or as gauze bands, and were assessed as trimmings. The court, Wheeler, District Judge, said:

> These articles are not in themselves trimmings, and will not become such until they are made into designs to be applied as trimmings, or are made into trimmings as they are applied to articles being trimmed. That they are used for making trimmings does not make them such. They are not such, within the meaning of the tariff acts, unless they had by usage come to be known by that name, and the evidence taken in this court shows quite clearly that they had not been brought within the meaning of that word.

The authority of this case was recognized in Gartner *v.* United States (131 Fed., 574). In that case the court said:

> The single question presented is whether these articles are in fact trimmings. The board of appraisers found that the ribbons were applied to a variety of uses, some of which were of the character of trimmings, while others—such as the use for tying bonbon boxes, and as drawing strings for underwear and in corsets—were not in the nature of trimmings. The board also found that in most instances where used for trimming they

were cut, tied, and otherwise fashioned for their ultimate use. In these circumstances I should feel inclined to follow the decision of Judge Wheeler in Robinson v. United States (C. C., 121 Fed., 204), where it was held that such articles did not become trimmings until they were so fashioned as to be applied to the articles to be trimmed.

And, referring to the decision of the Supreme Court in the hat-trimming cases and distinguishing them, the opinion proceeds:

In the present case the testimony establishes that the chief uses of these articles are not for trimming hats or dresses, and that they are not in fact or commercially within the class of goods known as trimmings.

The question again arose in Naday & Fleischer v. United States (155 Fed., 303). The articles in question in that case were ribbons, ornamented with characteristic designs to be used as trimming and intended to be sewed directly upon the garment without being made into anything else before being appended thereto. It was said by the court:

It has become well established that ribbons that must be made into bows, rosettes, and the like before being used for the purposes of trimming or ornamentation are not to be included under the provisions of paragraph 391 as trimmings; but if the article in question is manufactured with ornamentation and with characteristic design, to be used as a trimming and intended to be sewed directly upon a garment without being made into something else before being appended thereto, it is specifically provided for in paragraph 391 as a trimming.

This case was reviewed by the Circuit Court of Appeals, which also distinguished the hat-trimming cases from the case under consideration, and held that the word "trimming" should be given its meaning in trade and commerce, and upon conflicting testimony concurred with the board that the articles in question were within the trade meaning of galloons or trimmings with certain exceptions, and affirmed the decision of the Circuit Court.

This case was followed in Loewenthal v. United States (180 Fed., 951), the evidence in that case showing that the ribbons in question had superimposed ornamentations of a different color from the ground fabric and were intended to be sewed directly upon the garment.

A similar question was presented to this court in Loewenthal v. United States (2 Ct. Cust. Appls., 43; T. D. 31592). In that case the importation consisted of narrow, woven silk fabrics from one-half to 1¼ inches in width showing original designs in colors and patterns. This court found in that case that these articles were shown by the evidence to be within the trade term of trimmings, and following the case of Naday v. United States (164 Fed., 44), sustained the assessment of the goods as such.

The Board of General Appraisers, in T. D. 35563, followed the Robinson case (121 Fed., 205), and said:

The goods represented by Exhibit 1D consist of crape mousseline, 24 inches wide, imported in the piece. In the condition as imported these goods are not trimmings.

The testimony shows that this merchandise is used for making trimmings by cutting it into various forms and shapes to be applied as trimmings. As was said in Robinson *v.* United States (121 Fed., 205), "that they are used for making trimmings does not make them such."

We think it is now well settled that piece goods are not to be classified as trimmings merely because they may be cut into forms and shapes and used for trimming purposes.

This line of cases would seem to be conclusive in favor of the contention of the importers. The fact that since this rule of law has been announced the Government has continued to assess these crape goods as trimmings would not justify us in departing from the rule of law, nor can the rule of law be restricted to a particular class of goods, whether crape, or mousseline, or other fabric of silk which is subject to precisely the same use and the same considerations. The rule appears to be that goods in the piece which are not commercially known as trimmings and which are not adapted to being used in the form in which imported as such, but require to be cut into forms or made into rosettes or bows before being applied to a garment, are not to be classified as trimmings. On the other hand, goods which are known commercially as trimmings or which are imported in a form in which they are intended to be used directly as trimmings, without anything further being done than a mere cutting of the goods, may be and should be classified as trimmings unless otherwise more specifically provided for.

As to the wider goods, the evidence shows that they are commercially known as mourning crapes, and the testimony fails to show that they are commercially known as veilings. There was testimony tending to show that they were to some extent used in making veils and that formerly their use was much more largely for veils than in recent years. A reason for this change is given by one of the witnesses. But the testimony is undisputed that their predominant use is for other purposes now and was at the enactment of the present tariff law. One witness estimates that not to exceed 5 per cent were used for veiling at the time this law was enacted, while the testimony of another witness would indicate that it might amount to 20 per cent. But the evidence is quite convincing that the prevailing use was not for veilings. So if the word "veilings" is to be construed as intended to fix the tariff status of the article at the time the law was enacted, it would appear that these goods could not fall within that description.

But there is also a failure to show that the goods are commercially known as veilings. In United States *v.* Lahey (83 Fed., 691) the question was whether certain goods were dutiable as chiffon veiling. The court treated the question as one of commercial designation, stating that it involved merely a question of fact.

So we find the situation as to these wider goods to be that they were not commercially known as veilings; that they were not at the time of the enactment of the present tariff law chiefly used as veilings, but that such use was a minor one.   Under these circumstances we feel bound to conclude that they were not assessable as such.   See American Bead Co. *v.* United States (5 Ct. Cust. Appls., 459; T. D. 35001).

The decision of the board is *reversed.*